| | | |
|---|---|---|
| Quinn Porter | * | IN THE |
| 3300 Chesley Avenue | | |
| Parkville, Maryland 21234 | * | CIRCUIT COURT |
| | | |
| Plaintiff, | * | FOR |
| | | |
| v. | * | BALTIMORE CITY |
| | | |
| Hunt Valley Contractors, Inc. | * | |
| 3705 Crondall Lane | | |
| Owings Mills, Maryland 21117 | * | |
| | | |
| Defendant, | | |
| | * | |
| Serve on Resident Agent: | | Case No.: |
| | * | |
| Linda Sparks | | |
| 3705 Crondall Lane | * | |
| Owings Mills, Maryland 21117 | | |
| | * | |
| AND | | |
| | * | |
| Tom Sparks | | |
| 3705 Crondall Lane | * | |
| Owings Mills, Maryland 21117 | | |
| | * | |
| Defendant, | | |
| | * | |
| AND | | |
| | * | |
| T.J. Spampinato | | |
| 3705 Crondall Lane | * | |
| Owings Mills, Maryland 21117 | | |
| | * | |
| Defendant. | | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## COMPLAINT

**COMES NOW**, Quinn Porter, by and through his attorneys, Paul V. Bennett, Esq.,

Jeffrey J. Sadri, Esq., and the Law Offices of Bennett & Ellison, P.C., and hereby sues

Defendants Hunt Valley Contractors, Inc., Tom Sparks, and T.J. Spampinato (collectively

referred to herein as "Defendants"), and states as follows:

1

## JURISDICTION AND VENUE

1.  This Court has personal jurisdiction pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-102, as Defendant Hunt Valley Contractors, Inc. (hereinafter referred to as "Defendant HVC") maintains their principal place of business in Maryland and may be served with process in Maryland.

2.  This Court has personal jurisdiction pursuant to MD. CODE ANN., CTS. & JUD. PROC. §§ 6-102, 6-103(b), as Defendants Tom Sparks and T.J. Spampinato maintain their principal place of business in Maryland, transact business in Maryland, and are believed to be domiciled in Maryland.

3.  This Court constitutes the proper venue pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-201, as Defendants carry on regular business in Baltimore City, Maryland.

4.  This Court has subject matter jurisdiction pursuant to the Maryland Wage and Hour Law, MD. CODE ANN., LAB. & EMPL., § 3-401, *et seq.* (hereinafter referred to as "MWHL").

5.  This Court has subject matter jurisdiction pursuant to the Maryland Wage Payment and Collection Law, MD. CODE ANN., LAB. & EMPL., § 3-501, *et seq.* (hereinafter referred to as "MWPCL").

6.  This Court may adjudicate claims brought under the Fair Labor Standards Act of 1938 (as amended), 29 U.S.C. § 201, *et seq.* (hereinafter referred to as "FLSA").

7.  This Court may adjudicate claims brought under Maryland common law.

8.  That at all times relevant herein, each Defendant constituted an "employer" within the meaning of the MWHL, MWPCL, and FLSA.

## FACTS COMMON TO ALL COUNTS

9.      Defendant HVC employed Plaintiff as a Laborer from approximately February 2,

2017, until his termination from employment on or about December 26, 2018.

10.     At all times relevant herein, Defendant Tom Sparks constituted the Chief Executive

Officer and an owner of Defendant HVC. As such, Defendant Tom Sparks had

authority to hire, fire, suspend, and otherwise discipline Plaintiff; authority to

supervise Plaintiff and control his work schedule and employment conditions;

authority to determine the rate and method of Plaintiff's pay; and authority to

maintain Plaintiff's employment records. Defendant Tom Sparks thereby exercised

substantial control over the terms and conditions of Plaintiff's employment to qualify

as Plaintiff's "employer" under the MWHL, MWPCL, and FLSA.

11.     At all times relevant herein, Defendant T.J. Spampinato served as Defendant HVC's

Vice-President of Operations, and co-owner. Thus, Defendant T.J. Spampinato had

authority to fire and otherwise discipline Plaintiff; authority to supervise Plaintiff and

control his work schedule and employment conditions; authority to determine the rate

and method of Plaintiff's pay; and authority to maintain Plaintiff's employment

records. Defendant T.J. Spampinato thereby exercised substantial control over the

terms and conditions of Plaintiff's employment to qualify as Plaintiff's "employer"

under the MWHL, MWPCL, and FLSA.

12.     While employed by the Defendants, Plaintiff worked at least forty (40) hours per

week. From approximately February 2, 2017, to February 2, 2018, Plaintiff made an

hourly wage of twenty dollars ($20.00) per hour. From approximately February 3,

2018, until December 26, 2018, he made an hourly wage of twenty-one dollars

3

($21.00) per hour. Plaintiff also received employment benefits, including, without limitation, health insurance.

13.    Plaintiff's job duties as a Laborer included, without limitation, loading Defendants' vehicles with materials, driving Defendants' vehicles to and from job sites, and working on commercial projects in Maryland, the District of Columbia, and Virginia. Plaintiff did not supervise other employees on a regular basis, nor did he work in an administrative, executive, and/or professional capacity while employed by the Defendants.

14.    In 2017, Plaintiff was supervised by Lewis ("Pete") Studebaker, employed by Defendants as a Foreman, and Travis Spampinato, employed by Defendants as a Superintendent. In 2018, Plaintiff was supervised by Lee Hensley, employed by Defendants as a Foreman, and Travis Spampinato. During his employment with Defendants, Plaintiff also reported to other Foremen and upper management officials on an as-needed basis.

15.    Plaintiff was required to report to the Defendants' principal place of business (3705 Crondall Lane, Owings Mills, Maryland 21117), commonly referred to as "the shop" (hereinafter referred to as "the shop"), at 5:30 a.m., approximately five (5) to six (6) days per week. Defendants' employment handbook stated, in pertinent part, "all field employees are expected to report to the shop by 5:30am daily." Plaintiff constituted a field employee employed by the Defendants. After Plaintiff arrived at the shop, Defendants would then inform him of his job assignment(s).

16.    As a field employee, if Plaintiff did not report to Defendants' shop at 5:30 a.m., then he could be subjected to disciplinary action.

4

17.    After Plaintiff arrived at Defendants' shop at 5:30 a.m., he was under the Defendants' control and was thereby required to be on duty.

18.    After Plaintiff arrived at Defendants' shop at 5:30 a.m., Plaintiff performed work for the Defendants' benefit and under the Defendants' control, while at the shop. By way of example, Plaintiff loaded Defendants' vehicles with different materials, which was "integral and indispensable" to Plaintiff's principal job duties as a Laborer. Defendants gave daily work assignments to Plaintiff and other field employees upon arrival at the shop.

19.    Plaintiff was also required to report to the shop to receive instructions from his supervisors. Plaintiff "waited" at Defendants' shop until he received instructions from the Defendants regarding what job duties to perform. Plaintiff's "waiting time" was thereby under the Defendants' control and for the Defendants' benefit, and the "waiting time" was an integral part of Plaintiff's job. Plaintiff was thereby "engaged to wait" at the shop.

20.    Plaintiff remained at the Defendants' shop until he was instructed to travel to the job site (which could be, by way of example, in Maryland, Virginia, or the District of Columbia). Therefore, all time which Plaintiff spent at the Defendants' shop, until he left for the job site, constituted compensable time under federal and state laws.

21.    Plaintiff's travel time from Defendants' shop to the job site, which was often at least one and one-half (1 ½) to two (2) hours per day, constituted compensable travel time under federal and state laws, as said travel time was "working time," *e.g.* that which occurred during regular work hours, and that which constituted a continuation of his principal work activities. Plaintiff often traveled from the shop to the job site in a

Defendant vehicle. Additionally, on various occasions, Plaintiff drove a Defendant vehicle from the shop to the job site.

22.     From approximately April 3, 2017 to February 2, 2018, Plaintiff was not compensated for approximately seventy-six (76) regular hours and one hundred and eleven and one-half (111.50) overtime hours, which represents time Plaintiff spent at the shop and time Plaintiff spent traveling from the shop to the job site, and for which he was not compensated. During this time frame, Plaintiff made twenty dollars ($20.00) per hour. As such, Plaintiff is owed approximately four thousand eight hundred sixty-five dollars ($4,865.00) for the April 3, 2017-February 2, 2018 time period.

23.     From approximately February 5, 2018 to December 20, 2018, Plaintiff was not compensated for approximately sixty-nine and one-half (69.50) regular hours and fifty-three and one-half (53.50) overtime hours, which represents time Plaintiff spent at the shop and time Plaintiff spent traveling from the shop to the job site, and for which he was not compensated. During this time period, Plaintiff made twenty-one dollars ($21.00) per hour. As such, Plaintiff is owed approximately three thousand one hundred forty-four dollars seventy-five cents ($3,144.75) for the February 5, 2018-December 20, 2018 time period.

24.     On average, Plaintiff spent approximately eight and one-half (8 ½) hours at the job site on any given day. After finishing work at the job site, Plaintiff would load the materials back into the Defendant vehicle(s) for transportation back to the shop. Plaintiff also frequently drove a Defendant vehicle back to the shop.

6

25.    On various occasions, Defendants did not compensate Plaintiff for the travel time
       from the job site back to the shop, despite Defendants having control over the
       Plaintiff. During this travel time, Defendants frequently made stops and went to other
       job sites to perform work. Plaintiff and other employees also had to remain awake
       during the ride from the shop back to the job site.

26.    Throughout his employment with Defendants, Plaintiff repeatedly complained to
       Travis Spampinato, Mr. Hensley, and other Foremen about Defendants' failure to pay
       him in accordance with federal and state laws, and thereby he protested against what
       he objectively believed constituted unlawful employment practices. By way of
       example, Plaintiff told said individuals that Defendants were legally required to
       compensate him for travel time.

27.    In or about September of 2018, Plaintiff complained to Defendant T.J. Spampinato
       about what he perceived constituted unlawful wage and hour practices. Plaintiff told
       Defendant T.J. Spampinato that Defendants were legally required to pay him for
       travel time. Defendant T.J. Spampinato told Plaintiff that Defendants had "consulted
       with lawyers" about wage and hours laws, and if Plaintiff was unhappy, he could
       work elsewhere.

28.    On a regular basis, Defendants' managerial officials, including, without limitation,
       Maurice Womack (employed by Defendants as a Superintendent), Travis
       Spampinato, and Defendant T.J. Spampinato, said that Defendants "had lawyers," an
       obvious reference to Defendants' violations of federal and state wage and hour laws.

7

29.     In approximately late November of 2018/early December of 2018, Plaintiff once
        again told Defendant T.J. Spampinato that federal and state laws required that he be
        compensated for travel time from Defendants' shop to the job site, and vice versa.

30.     On December 20, 2018, at 5:30 a.m., Plaintiff arrived at Defendants' shop per
        Defendants' policies. Shortly thereafter, Travis Spampinato instructed Plaintiff to
        close a Defendant-vehicle's tailgate, to which Plaintiff obliged. Travis Spampinato
        told Plaintiff that he would not be compensated for all his travel time. Plaintiff
        expressed that the Defendants were required by law to compensate him for travel
        time, and that Defendants' refusal to do so constituted a violation of the law. Travis
        Spampinato told Plaintiff that he could go home that day, and assured Plaintiff that, if
        he did go home, he would not be terminated from employment. With Travis
        Spampinato's permission, Plaintiff went home.

31.     On or about December 26, 2018, Defendant T.J. Spampinato terminated Plaintiff
        from employment for allegedly being insubordinate on December 20, 2018, *supra.*

32.     At all times relevant herein, Plaintiff met and/or exceeded Defendants' legitimate job
        expectations.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**OF 1938 (AS AMENDED)**
**FLSA, 29 U.S.C. § 201, *et seq.***
**(All Defendants)**

33.     Plaintiff hereby restates and incorporates paragraphs 1-32 of this Complaint as though
        fully set forth herein.

34.     At all times material herein, Plaintiff was entitled to the rights, protections, and
        benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

8

35.     At all times material herein, each Defendant was an "employer" of the Plaintiff covered by the FLSA, 29 U.S.C. § 203(d), and Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. § 203(e)(l).

36.     Defendants violated the FLSA by failing to account for and compensate Plaintiff for all hours he worked, including, but not limited to, the hours he worked in excess of forty (40) hours each workweek, as well as the corresponding overtime premium pay for each hour he worked in excess of forty (40) hours each workweek, as described in the Facts Common to All Counts, *supra.*

37.     The FLSA regulates, among other things, the payment of an overtime premium, "not less than one and one-half times the regular rate at which [the employee] is employed" for all hours worked per week in excess of forty (40), by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

38.     Defendants are subject to the overtime pay requirements of the FLSA because each Defendant is an enterprise engaged in commerce and/or their employees, including Plaintiff, are engaged in commerce, as defined in the FLSA, 29 U.S.C. §§ 203(b), (s).

39.     Defendants' failure to properly compensate Plaintiff for all hours worked was a blatant violation of the FLSA.

40.     Defendants' failure to properly compensate Plaintiff not less than one and one-half times the regular rate at which he was employed for all hours worked per week in excess of forty (40) was a violation of the FLSA, 29 U.S.C. § 207 and was willfully

9

perpetrated, as Defendants neither acted in good faith nor had reasonable grounds to believe their actions and omissions were not a violation of the FLSA.

41.     As a result of the aforesaid willful violations of the FLSA's provisions, compensation in the amount of eight thousand nine dollars seventy-five cents ($8,009.75), at a minimum, which takes hours worked and overtime premium into consideration, has been unlawfully withheld by Defendants from the Plaintiff for which Defendants are liable pursuant to 29 U.S.C. § 216(b).

42.     Plaintiff is further entitled to an award of liquidated damages in an amount equal to the amount of unpaid compensation as described above pursuant to the FLSA, 29 U.S.C. § 216(b).

43.     Plaintiff is further entitled to damages within the three (3) years preceding the date of filing of this Complaint, including periods of equitable tolling, because Defendants acted willfully and knew and/or showed reckless disregard of whether their conduct was prohibited by the FLSA. *See* 29 U.S.C. § 255(a).

44.     Pursuant to the FLSA, 29 U.S.C. § 216(b), Plaintiff is also entitled to reasonable attorney's fees and costs of the action.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT II**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents)**
**FLSA, 29 U.S.C. § 201, *et seq.***
**(All Defendants)**

45.     Plaintiff hereby restates and incorporates paragraphs 1-32 of this Complaint as though fully set forth herein.

46.   The FLSA renders it unlawful for employers such as Defendants "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act." 29 U.S.C. § 215(a)(3).

47.   Throughout his employment with Defendants, Plaintiff repeatedly complained to Travis Spampinato and to Defendants about Defendants' failure to pay him in accordance with the FLSA. By way of example, Plaintiff told Defendants that they were legally required to compensate him for travel time. Plaintiff thereby protested against what he objectively believed constitute a violation of the FLSA. *See, e.g.,* 29 U.S.C. § 254(a); 5 C.F.R. §§ 551.401, 551.422; 29 C.F.R. 785.33.

48.   In or about September of 2018, Plaintiff complained to Defendant T.J. Spampinato about what he perceived constituted unlawful wage and hour practices. Plaintiff told Defendant T.J. Spampinato that Defendants were legally required to pay him for travel time. Defendant T.J. Spampinato told Plaintiff that Defendants had "consulted with lawyers" about wage and hours laws, and if Plaintiff was unhappy, he could work elsewhere.

49.   On a regular basis, Defendants' managerial officials, including, without limitation, Maurice Womack, Travis Spampinato, and Defendant T.J. Spampinato, said that Defendants "had lawyers," an obvious reference to Defendants' violations of the FLSA.

50.   In approximately late November of 2018/early December of 2018, Plaintiff once again told Defendant T.J. Spampinato that federal law required that he be compensated for travel time from Defendants' shop to the job site, and vice versa.

11

51.     On December 20, 2018, at 5:30 a.m., Plaintiff arrived at Defendants' shop per

        Defendants' policies. Shortly thereafter, Travis Spampinato instructed Plaintiff to

        close a Defendant-vehicle's tailgate, to which Plaintiff obliged. Travis Spampinato

        told Plaintiff that he would not be compensated for all his travel time. Plaintiff

        expressed that the Defendants were required by law to compensate him for travel

        time, and that Defendants' refusal to do so constituted a violation of the law. Travis

        Spampinato told Plaintiff that he could go home that day, and assured Plaintiff that, if

        he did go home, he would not be terminated from employment. With Travis

        Spampinato's permission, Plaintiff went home.

52.     On or about December 26, 2018, Defendant T.J. Spampinato terminated Plaintiff

        from employment for allegedly being insubordinate on December 20, 2018.

53.     Plaintiff engaged in activity protected from retaliation under the FLSA, including, but

        not limited to, asserting complaints to Defendants, his employers, with a reasonable

        and good faith belief that he was asserting rights that were protected by law.

54.     Plaintiff suffered adverse action by his employers subsequent to his protected activity

        in that he was discharged from employment after complaining about being denied pay

        for hours worked. *See* 29 U.S.C. § 215(a)(3).

55.     The close proximity in time between Plaintiff's protected activities and Defendants'

        decision to terminate Plaintiff from employment, establishes a causal connection

        between the two (2).

56.     Because of Defendants' willful violations of the FLSA, 29 U.S.C. § 215(a)(3),

        Defendants are liable to Plaintiff under 29 U.S.C. § 216(b) for monetary relief

including back pay, an additional equal amount as liquidated damages, and

reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT III**
**ABUSIVE DISCHARGE IN VIOLATION OF MARYLAND PUBLIC POLICY**
**Maryland Common Law**
**(Alternative Theory of Recovery)**
**(All Defendants)**

57.    Plaintiff hereby restates and incorporates paragraphs 1 through 32 of this Complaint

as though fully set forth herein.

58.    A Maryland employer is not permitted to terminate an employee in a manner which

contravenes a clear mandate of Maryland public policy.

59.    There exists in Maryland a clear mandate of public policy to protect employees from

disciplinary action, including termination, for making complaints to their employers

about the payment of wages under the Maryland Wage and Hour Law ("MWHL").

60.    It is illegal for an employer to take adverse action against an employee because the

employee had complained to his employer that he was not paid all wages due under

the MWHL. MD. CODE ANN., LAB. & EMPL., § 3-428.

61.    Throughout his employment with Defendants, Plaintiff repeatedly complained to

Travis Spampinato and to Defendants about Defendants' failure to pay him in

accordance with the MWHL. By way of example, Plaintiff told Defendants that they

were legally required to compensate him for travel time and hours worked. Plaintiff

thereby protested against what he objectively believed constitution a violation of the

MWHL. *See, e.g.,* COMAR 09.12.41.10.

13

62.     In or about September of 2018, Plaintiff complained to Defendant T.J. Spampinato about what he perceived constituted unlawful wage and hour practices. Plaintiff told Defendant T.J. Spampinato that Defendants were legally required to pay him for travel time. Defendant T.J. Spampinato told Plaintiff that Defendants had "consulted with lawyers" about wage and hours laws, and if Plaintiff was unhappy, he could work elsewhere.

63.     On a regular basis, Defendants' managerial officials, including, without limitation, Maurice Womack, Travis Spampinato, and Defendant T.J. Spampinato, said that Defendants "had lawyers," an obvious reference to Defendants' violations of the MWHL.

64.     In approximately late November of 2018/early December of 2018, Plaintiff once again told Defendant T.J. Spampinato that state law required that he be compensated for travel time from Defendants' shop to the job site, and vice versa.

65.     On December 20, 2018, at 5:30 a.m., Plaintiff arrived at Defendants' shop per Defendants' policies. Shortly thereafter, Travis Spampinato instructed Plaintiff to close a Defendant-vehicle's tailgate, to which Plaintiff obliged. Travis Spampinato told Plaintiff that he would not be compensated for all his travel time. Plaintiff expressed that the Defendants were required by law to compensate him for travel time, and that Defendants' refusal to do so constituted a violation of the law. Travis Spampinato told Plaintiff that he could go home that day, and assured Plaintiff that, if he did go home, he would not be terminated from employment. With Travis Spampinato's permission, Plaintiff went home.

14

66.    On or about December 26, 2018, Defendant T.J. Spampinato terminated Plaintiff from employment for allegedly being insubordinate on December 20, 2018.

67.    Plaintiff was thereby discharged in a manner which contravened a clear mandate of Maryland public policy.

68.    There is a nexus between the Plaintiff's conduct and Defendants' decision to fire him.

69.    Plaintiff does not have a statutory remedy under Maryland law and is thereby permitted to pursue a claim of wrongful discharge under Maryland common law.

70.    That the intentional illegal actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

71.    As a direct and proximate result of Defendants' illegal actions, Plaintiff has suffered lost wages and benefits, emotional distress, attorneys' fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT IV**
**VIOLATION OF MARYLAND WAGE AND HOUR LAW**
**MD. CODE ANN., LAB. & EMPL., § 3-401, *et seq.***
**(All Defendants)**

72.    Plaintiff hereby restates and incorporates paragraphs 1-32 of this Complaint as though fully set forth herein.

73.    At all times material herein, Plaintiff was entitled to the rights, protections, and benefits provided under the Maryland Wage and Hour Law. MD. CODE ANN., LAB. & EMPL., § 3-401, *et seq.*

74.    At all times material herein, Defendants were each an "employer" of the Plaintiff covered by the MWHL. MD. CODE ANN., LAB. & EMPL., § 3-401(b).

75.    The MWHL requires employers such as Defendants to compensate Plaintiff for all hours worked, including, but not limited to, at a rate of one and one-half times his

15

regular hourly rate of pay for each hour worked in excess of forty (40) hours per
workweek. MD. CODE ANN., LAB. & EMPL., §§ 3-415, 3-420.

76.   Defendants willfully violated the MWHL by failing to account for and compensate
Plaintiff for all hours he worked, including, without limitation, the hours he worked in
excess of forty (40) hours each workweek, as well as the corresponding overtime
premium pay for each hour he worked in excess of forty (40) hours each workweek,
as stated in the Facts Common to All Counts, *supra*.

77.   As a result of the aforesaid willful violations of the MWHL's provisions,
compensation in the amount of eight thousand nine dollars seventy-five cents
($8,009.75), at a minimum, which takes hours worked and overtime premium into
consideration, has been unlawfully withheld by Defendants from the Plaintiff for
which Defendants are liable pursuant to the MWHL.

78.   Pursuant to MD. CODE ANN., LAB. & EMPL., §§ 3-427(a), (d), Defendants are thereby
liable to Plaintiff for unpaid wages (including unpaid overtime compensation), an
additional amount equal to the unpaid wages (including unpaid overtime
compensation) as liquidated damages, and reasonable counsel fees and costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT V
## VIOLATION OF THE MARYLAND WAGE PAYMENT
## AND COLLECTION LAW
## MD. CODE ANN., LAB. & EMPL., § 3-501, *et seq.*
## (All Defendants)

79.   Plaintiff hereby restates and incorporates paragraphs 1-32 of this Complaint as though
fully set forth herein.

80. At all times material herein, Plaintiff was entitled to the rights, protections, and benefits provided under the Maryland Wage Payment and Collection Law, MD. CODE ANN., LAB. & EMPL., § 3-501, *et seq.*

81. At all times material herein, Defendants were each an "employer" of the Plaintiff covered by the MWPCL. MD. CODE ANN., LAB. & EMPL., § 3-501(b).

82. The MWPCL requires employers such as Defendants to pay Plaintiff "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." MD. CODE ANN., LAB. & EMPL., § 3-505(a).

83. Defendants willfully failed or refused to pay Plaintiff all wages due for work he had performed before the termination of his employment, as described in the Facts Common to All Counts, *supra,* including accumulated unpaid overtime, in violation of the MWPCL.

84. Defendants did not withhold the wages due as a result of a *bona fide* dispute. *See* MD. CODE ANN., LAB. & EMPL., § 3-507.2(b).

85. Pursuant to the MWPCL, MD. CODE ANN., LAB. & EMPL., § 3-507.2, Defendants are liable to Plaintiff for three (3) times the amount of his unpaid wages, and reasonable attorney's fees and costs.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Quinn Porter, Plaintiff, demands judgment against Defendants Hunt Valley Contractors, Inc., Tom Sparks, and T.J. Spampinato as follows:

a.  Compensatory damages in excess of $75,000.00;

b.  Punitive damages in excess of $75,000.00;

c.  Backpay and interest on same;

d.  Prejudgment and post judgment interest;

e.  Award attorney's fees and costs, including expert witness fees, as allowed by law;

f.  And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully Submitted,

Paul V. Bennett, Esq.
Bennett & Ellison, P.C.
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@belawpc.com

Jeffrey J. Sadri, Esq.
Bennett & Ellison, P.C.
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: jsadri@belawpc.com

*Attorneys for Plaintiff*

18

## DEMAND FOR JURY TRIAL

Plaintiff, Quinn Porter, by and through his attorneys, Paul V. Bennett, Esq., Jeffrey J. Sadri, Esq., and the Law Offices of Bennett & Ellison, P.C., hereby demands that this above captioned matter be tried before a jury on all issues so triable.

Respectfully Submitted,

Paul V. Bennett, Esq.
Bennett & Ellison, P.C.
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@belawpc.com

Jeffrey J. Sadri, Esq.
Bennett & Ellison, P.C.
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: jsadri@belawpc.com

*Attorneys for Plaintiff*

19